ANNIE CUNNINGHAM, DEFENDANT IN ERROR, v. THE
MUTUAL LOAN AND BUILDING ASSOCIATION OF THE
CITY OF PASSAIC, PLAINTIFF IN ERROR.

Submitted March 27, 1905—Decided November 20, 1905.

When a building loan association, incorporated under the act entitled
"An act to encourage the establishment of mutual loan, homestead
and building associations," approved April 9th, 1875, has issued
shares of stock in different series, as permitted by the supplement
to that act, approved March 20th, 1887, it may designate, by its
constitution and by-laws, the manner in which such series shall
mature and determine. If maturity is thereby to be declared by
the directors, the holder of shares in a series thus declared to have
matured ceases to be a member and becomes a creditor of the
association, entitled to maintain an action at law for the declared
value of the matured shares.

On error to the Supreme Court.

For the plaintiff in error, *Thomas M. Moore.*

For the defendant in error, *Hugh B. Reed.*

The opinion of the court was delivered by

MAGIE, CHANCELLOR. The judgment brought before us
by this writ of error was entered in an action brought by
Annie Cunningham, the plaintiff below, against the Mutual
Loan and Building Association of the city of Passaic, incor-
porated under the provisions of the act entitled "An act to
encourage the establishment of mutual loan, homestead and
building associations," approved April 9th, 1875, the de-
fendant below, to recover money claimed to be due her from
that association.

The Chief Justice, before whom the issue was tried, refused
a motion to nonsuit, and at the close of the evidence directed
a verdict for the plaintiff below. Exceptions were duly taken
and allowed, and the assignments of error present the ques-
tion of the propriety of these rulings of the trial judge.

It is first contended that the proofs before the court showed that the plaintiff below was not entitled to maintain an action at law against the association for the recovery of the money she claimed.

If the plaintiff below was a member of the association claiming to receive the amount of money due on matured shares upon a claim which required an accounting to determine whether the shares had matured, it seems obvious that her remedy would be in the Court of Chancery. In the case of *Campbell, Receiver,* v. *Perth Amboy Loan Association,* 38 *Vroom* 71, a declaration at law averred that by the constitution of one such association it was provided that each member should receive $200 for his share when the board of directors of the association should have ascertained that the actual value amounted to that sum, and that on a certain day the board of directors did ascertain the actual value to be that sum. This declaration was demurred to, and the Supreme Court held that the averment that the constitution provided for an ascertainment of value by the board of directors, and upon such ascertainment allowed the member to make claim, was opposed to the provisions of the act above referred to, under which such associations were formed, the first section of which, among other things, declares the purpose of the association thus: "For the further purpose of accumulating a fund to be returned to its members who did not obtain advances when the funds of such association shall amount to a certain sum per share, to be specified in the articles." This was construed as making the maturity of shares depend, not upon the declaration of the board of directors, but upon the fact of the fund amounting to a specified sum per share.

Whether this correctly represents the *status* of the shareholder in what has been called by the text-writers a "terminating society"—that is, a society which ceases to maintain its existence when the shares of stock have attained to the value of the sum fixed by the articles of the association—need not be decided.

For the plaintiff below was a shareholder of an association issuing its shares in successive series, and the question is whether such associations have not enlarged privileges in respect to the maturity of successive series, and whether they are limited by the language of the first section of the act which formed the basis of the conclusion of the Supreme Court in the case above cited. The power to issue shares of stock in series was granted by a supplement to the original act, approved March 20th, 1887, the first section of which is in these words: "That any association which now is or hereafter may become incorporated under the provisions of the act to which this is a further supplement may issue shares of stock in different series, to mature and determine in such manner as may be designated in and by the constitution and by-laws of such association or any amendment lawfully made thereto." By a further supplement, approved February 14th, 1888, the preamble to which recited that doubts had arisen as to the right to issue new shares or series of shares under the original acts of incorporation, and that to remove all doubts and authorize the forming of such new series it was provided that such series as had previously been issued, and series which might thereafter be issued, should be valid and effective, although they increased the number of shares of the association beyond the limit fixed in the certificate of incorporation. By this supplement it was further provided that the relative value of the shares of successive series should be kept separate and distinct, and the value thereof reported in an annual statement to the shareholders.

A comparison of the first section of the supplement of 1887 with the first section of the original act clearly indicates a legislative intent to make the maturity and termination of series of shares depend upon the scheme designated in the constitution and by-laws of the association.

The constitution of this association was put in evidence. By section 4 of article 2 it provided for a new series of shares to be issued at each annual meeting of the association, unless the shareholders should otherwise determine. Sec-

tion 6 of the same article provides that at each monthly meeting of the board of directors the approximate value of each share shall be declared, for the convenience of all concerned, estimated upon the profits actually made.

By section 4 of article 3 it was provided that each shareholder should pay $1 per month per share, until, by the payments so made and the profits accumulated thereon, the said share should be declared to have attained a par value of $200, when that sum should be payable in cash, or its equivalent, in the manner set forth in section 8 of article 2.

Section 8 of article 2 provides that when the shares in a particular series shall have attained a par value of $200 each, one-half of the receipts of the association should be appropriated and set aside by the board of directors exclusively for the refunding and repayment thereof, and priority in such payments should be given to that shareholder willing to allow the highest premium; but one-half of one per cent. a month should be allowed on all such money from the time such share is declared, at par, until the whole of such payment is made.

The change of scheme indicated by the difference between the language of the first section of the original act and the first section of the supplement of 1887 was within legislative competency, and need not be vindicated by the court. I think, however, that the legislative change of scheme was upon the ground of material difference in the cases. A terminating society, whose existence ceased with the maturity of all its stock, stood upon a different footing from a continuing society, or serial company, issuing series of stock and dealing with the respective profits arising from respective payments. In regard to these successively maturing series of shares the association continued to maintain its corporate existence, and a reason existed for providing how the maturity of shares should be determined. The legislative scheme was to permit that to be fixed by the association, and if the association has fixed a scheme the shareholders must be held bound thereby.

That this association had fixed a scheme seems to be clear. By the extracts from the constitution above referred to, it thereby committed to the board of directors the power to declare when a series had reached maturity. When that declaration has been made a shareholder in that series is in a changed relation to the association. He is no longer a member, but has become a creditor, to whom the association is liable for the amount of his matured shares, payable according to the provisions of the constitution.

The proofs showed that the plaintiff below became a member of the association in 1886, taking five shares in the fifth series, and that in 1889 she took five more shares in the same series; that she paid all dues and charges on her ten shares until July or August, 1897, when William Malcolm, who had been the secretary of the association from the time she became a member, and who continued to hold that office for some time after, told her that the fifth series had matured; that the book in which her payments and credits were entered showed entries, by Malcolm, indicating credits to her of $2,007.50, in August, 1897; that the minutes of the board of directors showed that, at a meeting on July 12th, 1897, a vote was had, declaring the actual value of the various series of shares from the fifth to the twenty-fourth, inclusive, and that the value of the fifth series was thus declared to be $200.75.

Under the provisions of section 140 of the Practice act, interrogatories were served on the association, the defendant below, and written answers thereto, under the oath of its president, were served on the plaintiff below. They were filed and received in evidence. The following are pertinent:

"Interrogatory 1. Upon what date did the fifth series of stock in the defendant association mature?

"Answer. July 12th, 1897.

"Interrogatory 18. Has one-half of the revenue of the association been sufficient, since the maturity of the fifth series of stock, to pay the maturity value of all the shareholders in said series?

"Answer. The defendant believes that it has."

Plaintiff below further testified that about a month after the secretary had told her that the fifth series had matured she called on him for the money due on her shares, and was asked by him to leave it in the association, and was told that it would draw interest. She demanded and received from him $300. While she declares that he persuaded her to leave the balance, she also declares that she left it because she could not get it. Her book shows a payment of $300 at that time, and that since that time she had been paid interest by the association on the shares left undrawn, so that in May, 1900, there was $1,700 yet undrawn.

There were produced by the association at the trial two drafts, which plaintiff below put in evidence. They were dated August 11th, 1897, and drawn by the proper officers of the association to the order of Annie Cunningham, one for $1,007.50 and one for $1,000. Each was expressed to be for "account of withdrawal of book 471," which was the book of plaintiff below. Although plaintiff below could neither read nor write, each draft purported to have her signature endorsed thereon. Both were stamped paid, but there was no claim that Annie Cunningham received the money thereon.

Upon this evidence it seems clear that the maturity of these shares had been declared in the manner prescribed by the scheme of the constitution, and that it had been recognized by the association by its officers. Thereafter the plaintiff below became a creditor of the association, entitled to receive her money; provided the funds arising from the appropriation of one-half of the receipts of the association should be sufficient for her payment. Under such circumstances her remedy could be had by an action at law. The learned trial judge was justified in declaring that she had become a creditor of the association.

On the part of the association it was, however, further insisted that it was erroneous to direct a verdict for the whole amount of the claim of the plaintiff below, as indicated by her book. The evidence on its part disclosed that Malcolm, the secretary of the association, had been a defaulter,

and that the funds of the association, to a large amount, had disappeared, so that, in 1902, there was a deficiency of $116,000. The contention is that the plaintiff below should submit to bear her share of the loss thus disclosed. If she were a member holding shares in a non-matured series, such, undoubtedly, would be the case, and an accounting, which she might demand in equity, must recognize her liability to share the losses of the association. But such is not her position. From the declaration of the directors in July, 1897, or at least from the period in August when her book disclosed the maturity of her shares, she was not a member, but a creditor, of the association.

It is said that there is proof that some of the embezzlements of Malcolm antedated the declaration of the maturity of the fifth series, so that it would, or might, affect the maturity and the declaration of the directors. The evidence was entirely insufficient to disclose any embezzlement prior to the date in question. If such prior defalcation had been disclosed, and it had been proved that it in fact affected the fifth series, it would not have disturbed the conclusion above reached. If the declaration of the directors, made within the scheme of the constitution, was erroneous and mistaken, the right of the other shareholders and the directors representing them was to have their declaration reviewed and set aside. They could not defeat the holder of matured shares in an action at law, except by avoiding the declaration which formed the foundation of the shareholder's claim.

There is no contention made that the fund out of which the shares of plaintiff below may be paid has not amounted to sufficient to serve that purpose and to be applicable thereto. This appears from the answers to the interrogatories served upon the association and the proofs. There was therefore nothing to submit to a jury.

The Chief Justice correctly held that plaintiff below was a creditor of the association, entitled to sue at law, and he was justified in directing a verdict.

The judgment must therefore be affirmed.

*For affirmance*—THE CHANCELLOR, DIXON, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY.   12.

*For reversal*—None.