CHARLES SOMMER, JR., PLAINTIFF, v. WORKINGMEN'S BUILDING AND LOAN ASSOCIATION OF NEWARK, A NEW JERSEY CORPORATION, DEFENDANT.

Decided February 9, 1939.

For the plaintiff, *Sidney Finkel.*

For the defendant, *Lowy & Lowy* (by *Louis J. Cohen*).

WILLIAM A. SMITH, C. C. J. The above matter was regularly reached for trial before me on December 6th, 1938, and counsel presented a transcript of the pleadings together with a stipulation of fact. Before drawing any jury counsel for the plaintiff moved for a judgment on the pleadings and the stipulation, claiming that under the grounds of his motion there was no issue of fact to be tried out; if the motion was denied it was submitted that additional evidence might be necessary with reference to the value of the assets of the defendant corporation, it being contended, however, by the plaintiffs that such testimony should be precluded by estoppel, but if it was permitted, that both sides would have the right to offer such testimony. On this admission I advised counsel that I would give them my views on the issues, having in mind the fact that if testimony as to value was admissible, they would have their chance for trial with submission of evidence.

The action is brought upon three counts, all of which seek to recover the matured value of fifty shares of stock in the defendant corporation.

The first count alleges that the plaintiff subscribed for fifty shares on April 1st, 1927, and the defendant agreed to pay $200 a share at maturity; that the shares matured on April 1st, 1932, and such maturity was so determined by the defendant and that a demand for payment has been made; that on December 23d, 1932, $2,000 was paid on account.

The second count is to the same effect with the additional allegation that the defendant declared and acknowledged its indebtedness.

The third count is also to the same effect, but alleges that the indebtedness was due in accordance with the by-laws and the regulations of the Department of Banking and Insurance.

Fifteen separate defenses are set up in the answer. The fourth and seventh are abandoned by the defendant pursuant to the stipulation. The other defenses are: 1. That the shares were not matured on the date alleged or since; 2. the earnings were insufficient to mature the shares; 3. the shares were matured by mistake in crediting $1,961.80 to the plaintiff's account; 5. orders of the Department of Banking and Insurance beginning with order No. 1 dated March 14th, 1933, made pursuant to the act of March 10th, 1933, required additional reserve which has diminished the value of the shares as theretofore figured by $1,961.80; 6. that the indebtedness due the plaintiff, if anything, is only in the sum of $6,820, being ascertained by deducting from the $10,000 the previous payment and the deduction referred to of $1,961.80; 8. section 11, chapter 59, laws of 1935, amending section 52 requiring payments of matured shares in the order that they come due, and that there are other shares due and unpaid ahead of the plaintiff's; 9. this refers to the same statute as under the eighth defense and claims that it provides that the matter of disbursement of net receipts and that the plaintiff has no right to sue so long as the defendant applies funds as required by section 11; 10. the plaintiff is not a creditor; 11. chapter 65 of the laws of 1925, being the revision of the Building and Loan laws, provides that membership continues until the holder of shares which are lapsed, matured, or withdrawn have been paid; that the plaintiff is a member and payment now would prefer him over others;

12. the plaintiff is a member of the defendant association and has to bear his proportionate share of losses, and the losses to the defendant have reduced the shares below maturity value; 13. this sets up a prior right of creditors for moneys borrowed by the defendant association; 14. that the shares never attained the value of $200; 15. statutes passed subsequent to the subscription for the shares apply and bar the plaintiff's suit.

To these defenses the plaintiff has replied in four separate replies besides: 1. a general denial; 2. subdivided as follows: A. that the shares matured by resolution of the board of directors in annual meeting required by the constitution and by-laws; B. that the defendant recognized the plaintiff as a creditor in the sum of $10,011.80; C. payments on account have recognized the indebtedness; D. acts of the legislature are not retroactive; 3. this sets up estoppel as stated in grounds A., B. and C. of the second paragraph of the reply; 4. this sets up waiver as stated in A., B. and C. of the second paragraph of the reply.

The stipulation which is submitted shows that the plaintiff did become a member as of April 18th, 1927; that the constitution and by-laws which were in effect at that time have been revised under dates of 1929, 1932 and 1936; that the plaintiff paid up to March 6th, 1932, $8,050; that profits were apportioned at various dates and at various percentages up to 1932; that on December 23d, 1932, payment to the plaintiff was made in the sum of $2,011.80; that thereafter the defendant association recognized that there was due the plaintiff the sum of $8,000.

At the time the motion in this matter was made the defendant asked permission to withdraw the agreement to paragraph 5 of the stipulation, which reads as follows:

"By a resolution of the board of directors of the defendant association plaintiff's shares were declared matured on May 6th, 1932, in the sum of $10,011.80."

I granted this application for this reason: that there was no such resolution passed by the board of directors. There is ample proof, however, in the stipulation that the defendant association recognized the shares as matured.

The stipulation shows that on January 17th, 1934, the defendant established a reserve in the sum of $1,680,341.98 based on appraisals of defendant's assets made in November, 1933, and on September 28th, 1936, the association increased its existing reserve by a twenty per cent. assessment, which effected a *pro rata* reduction in the value of all shares remaining unpaid. This assessment was approved by the Commissioner of Banking and Insurance October 8th, 1936, subsequent to the appraisal of the defendant's assets. The properties were carried at book value.

It is contended by the defendant that the setting up of these reserves subsequently to maturing the plaintiff's shares have reduced their value below maturity value and therefore the plaintiff is not entitled to payment of his shares. In the stipulation it is stipulated that these reserves are not in excess of an amount required to provide against losses actually sustained and those reasonably anticipated at the time they were established. The defendant claims as against the holder of matured shares unpaid that after maturity and before the payment the value of the shares may be reduced to provide for losses incurred up to the time additional reserve is established. It is also claimed by the defendant that when the plaintiff's shares were matured the assets of the association were not sufficient to mature such shares, the assets not having been revalued but having been carried at book value, and at the time of the maturity of the shares, these shares had been reduced below book value. I find that in so far as the defendant's right to make this claim is concerned, it will not be necessary for this to be determined now.

At the time the plaintiff subscribed for shares, he became a member of the defendant association and his interest in and his relationship to the defendant association was governed by the statutes then existing, and by the statutes then existing his membership continues until the shares are matured and paid. Section 5, chapter 65, laws of 1925. This is a revision of the Building and Loan act and makes provision for membership. It states in part as follows:

"When shares mature and are paid the subscribers thereto or owners thereof shall cease to be members."

Section 6 of the same act provides that the constitution of the association may be amended; section 58 of the act provides for control over the association's action by the Commissioner of Banking and Insurance.

It is my conclusion that as long as a member's shares remain unpaid he remains a member of the association and therefore is bound by the by-laws and constitution of the association as they may be thereafter amended, and bound by the laws, amendments and supplements to the Building and Loan act thereafter adopted and supplemented.

The provision in section 5 with reference to the membership was amended in Chapter 90, *Pamph. L.* 1932, *p.* 159, and restates the language referred to in the 1925 act as follows:

"When the matured or withdrawal value of shares has been paid, the subscribers thereto or owners thereof shall cease to be members."

It is my conclusion that the plaintiff, his shares not having as yet been paid, is still a member of the defendant association; he being still a member of the association he is bound by chapter 59, *Pamph. L.* 1935, *p.* 142 (*R. S.* 1937, 17:12-53). This law, among other things, amends section 52 of the original revision of the Building and Loan act of 1925, the amendment being in reference to the payment of matured shares, and contains this proviso:

"No member to whom any such association shall be obligated for the payment of any maturity or withdrawal shall have the right to bring suit against such association to recover the maturity or withdrawal value of his shares or any part thereof so long as the funds of such association shall be applied as required by this section * * *."

It will thus be seen that the plaintiff's right to bring a suit is limited and he cannot sue so long as the funds of such association shall be applied as required by the section referred to. This suit was commenced July 1st, 1937, which is subsequent to the time the 1935 act took effect.

It is the contention of the defendant that applying the act of 1935 to the claim of the plaintiff he is not entitled to payment of the matured value of his shares at the present time. I therefore hold that the defendant has a right to show that

the funds of the association have been applied as required by section 52, *supra*.

The stipulation by paragraph 18 stipulates that the disbursement of funds by the defendant association at all times during the period referred to in these proceedings were made in accordance with the statutes governing building and loan associations and pursuant to the orders promulgated by the Commissioner of Banking and Insurance.

In the case of *Myron Horowitz* v. *Guaranty Building and Loan Association of Newark,* 17 *N. J. Mis. R.* 274, I held that chapter 102, *Pamph. L.* 1932, *p.* 145, which amended the Building and Loan act of 1925 and provided for a similar provision against bringing suit as to withdrawing members as the 1935 act, *supra,* provides as to the rights of maturing members, and limits the right to sue by withdrawing member. It seems to me that under the circumstances the question of the constitutionality of the act of 1935, in so far as it applies to the plaintiff, is not in question. If it should be, however, it is my view that the determination of the Court of Errors and Appeals in *Bucsi* v. *Longworth Building and Loan Association,* 119 *N. J. L.* 120; 194 *Atl. Rep.* 857, is dispositive of the question in favor of the constitutionality of the act. The decision referred to passed upon chapter 102 of the laws of 1932 with regard to withdrawing members. But the act of 1935, *supra,* has the same relationship to the rights of maturing members as the 1932 act has to the rights of withdrawing members, and I therefore consider *Bucsi* v. *Longworth Building and Loan Association, supra,* as authority for the constitutionality of the act of 1935, *supra,* as to the rights of the plaintiff. I say this notwithstanding what is said in the opinion on page 133 with regard to the right of matured shareholders and the earlier case of *Cunningham* v. *Mutual Building and Loan Association,* 72 *N. J. L.* 175; 62 *Atl. Rep.* 307.

The Cunningham case was dealing with a statute entirely different and which existed before the Building and Loan act revision of 1925, and what was said in the opinion was not necessary for the determination of the case.

The rationale of the application of the 1935 act to the

rights of the plaintiff is demonstrated by the experience during the last decade. If this act is not applied, we find association in the position of being required to pay matured shareholders without cash with which to do so, thereby being forced to borrow money to make the payments to maturing shareholders. The maturing stockholder, as I have said, continues a member until the time of payment and he is therefore obliged to acquiesce in the provisions for the benefit of the association, one of which is to be barred from bringing suit, and so long as the funds of the association are applied as required by the provisions of the act.

I have also considered the questions raised by the plaintiff in his reply that the principles of estoppel and waiver apply as against the defendant. I do not think they do in this case. The plaintiff in this case has not changed his position by reason of any action on the part of the defendant, and therefore there is no estoppel; nor has the defendant waived the defense with regard to the plaintiff's present right to sue, it having never volunteered to relinquish this right.

The motion of the plaintiff for judgment on the pleadings and stipulation will therefore be denied.