J-A10009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RICHARD AND TINA-MARIE COLLIER, INDIVIDUALLY AND AS HUSBAND AND WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JEFFREY BALZER PUBLIC ADJUSTERS D/B/A NORTHERN PUBLIC ADJUSTERS AND JEFFREY BALZER | |
| Appellant | No. 329 WDA 2015 |

Appeal from the Judgment Entered January 27, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 14-011740

| | |
|---|---|
| RICHARD AND TINA-MARIE COLLIER, INDIVIDUALLY AND AS HUSBAND AND WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| JEFFREY BALZER PUBLIC ADJUSTERS D/B/A NORTHERN PUBLIC ADJUSTERS AND JEFFREY BALZER | |
| | No. 330 WDA 2015 |

Appeal from the Judgment Entered January 27, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 14-011740

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

JUDGMENT ORDER BY PANELLA, J.                **FILED JULY 15, 2016**

In these consolidated cross appeals, Richard and Tina-Marie Collier and Jeffrey Balzer Public Adjusters d/b/a Northern Public Adjusters and Jeffrey Balzer appeal from the declaratory judgment order entered by the Honorable Alan Hertzberg, Court of Common Pleas of Allegheny County. We affirm.

We assume the parties' familiarity with the facts and procedural history of the case. For a recitation of the facts and procedural history of this matter, we direct the reader to the opinion of the trial court. **See** Trial Court Opinion, 4/27/15, at 1-3.

"In reviewing a declaratory judgment, we are limited to determining whether the trial court committed a clear abuse of discretion or error of law." **Vanderhoff v. Harleysville Ins. Co.**, 78 A.3d 1060, 1065 (Pa. 2013) (citation omitted). "The grant or denial of a declaratory judgment is a matter lying within the sound discretion of the court of original jurisdiction." **Lowther v. Roxborough Memorial Hosp.**, 738 A.2d 480, 489 (Pa. Super. 1999) (citation omitted). "An appellate court may not substitute its judgment for that of the trial court if the determination of the trial court is supported by competent evidence." **Vanderhoff**, 78 A.3d at 1065 (citation omitted).

We have reviewed the briefs of the parties, the certified record, and the trial court opinion. The trial court, the Honorable Alan Hertzberg, has authored an opinion that ably disposes of the issues presented on appeal. We affirm based on that opinion. **See** Trial Court Opinion, 4/27/15, at 4-11.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/15/2016</u>

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

RICHARD AND TINA-MARIE COLLIER,
individually and as husband and wife,

        Plaintiffs,

                              CASE NO. GD 13-21486
vs.                           Superior Court Nos. 329 WDA 2015
                              and 330 WDA 2015

JEFFREY BALZER PUBLIC ADJUSTERS
d/b/a NORTHERN PUBLIC ADJUSTERS
and JEFFREY BALZER,

        Defendants.

<br>

OPINION

Alan Hertzberg, Judge                          Date Filed:  April 27, 2015

This is a dispute over the amount owed to a "public adjuster"[1] for obtaining funds from a homeowners insurer.

In March of 2011 Plaintiffs Richard and Tina-Marie Collier owned a home in Westmoreland County that was in the path of a tornado. Mr. and Mrs. Collier immediately notified their homeowners insurer, Homesite Insurance Company, that the tornado severely damaged their home. Homesite paid Mr. and Mrs. Collier $94,548 for the damage to the home and its contents. Homesite refused Mr. and Mrs. Collier's requests for additional compensation, and about a month after the tornado struck, they decided to hire public adjuster Jeffrey Balzer.

---

[1] 63 P.S. §1601 defines "public adjuster" as: Any person advertising, soliciting business or holding himself out to the public as an adjuster of claims for losses or damages arising out of policies of insurance, surety or indemnity upon property, persons or insurable business interests within this Commonwealth, and receiving any compensation or reward for the giving of advice or assistance to the insured in the adjustment of claims for such losses, or who for compensation or reward, whether by way of salary or commission or otherwise, directly or indirectly, solicits business, investigates or adjusts losses or advises the insured with reference to claims for losses on behalf of any other person engaged in the business of adjusting losses. The term does not include an agent or employee of an insurance company, association or an exchange, through whom a policy of insurance was written, in adjusting loss or damage under such policy, nor does it include an insurance producer acting as an adjuster if the services of the insurance producer in the adjustment are without compensation.

1

Defendant Jeffrey Balzer did obtain $165,611 in additional compensation from Homesite, but there still were covered losses Homesite refused to pay. Therefore, Mr. and Mrs. Collier hired attorney Bruce Gelman to sue Homesite for acting in bad faith toward them. See 42 Pa.C.S.§8371.

Late in 2011 Mr. Gelman filed suit on behalf of Mr. and Mrs. Collier against Homesite in the Court of Common Pleas of Westmoreland County. This Westmoreland County lawsuit contained counts against Homesite for acting in bad faith, unfair trade practices (73 P.S.§201-1 et seq.), intentional infliction of emotional distress and negligent underinsurance; that lawsuit is referred to hereinafter as the "bad faith claim." In September of 2013 the bad faith claim was resolved by a settlement that required Homesite to pay an additional $1,050,000[2]. Considering the relevant limits on the Homesite policy total $462,600 ($257,000 dwelling, $25,700 other structures and $179,900 personal property) and Homesite had previously paid $260,159, it is clear the settlement by payment of an additional $1,050,000 required Homesite to make a payment much greater than the policy's limits. The settlement, however, did not delineate the portion of the $1,050,000 owed pursuant to the insurance coverage from the amount attributable to Homesite's bad faith. Mr. Balzer's public adjuster compensation is 20% of all settlement proceeds paid by the insurer, and, believing he is entitled to 20% of the amount attributable to bad faith, he sent Mr. and Mrs. Collier an invoice for 20% of the entire $1,050,000 settlement.

Mr. and Mrs. Collier informed Mr. Balzer they would only pay him 20% of the portion of the $1,050,000 settlement attributed to the homeowners insurance policy. Mr. Balzer then filed a

---

[2] The terms of the settlement are confidential pursuant to the "Confidential Full Release and Settlement Agreement" Mr. and Mrs. Collier signed on 10/29/2013. See GD 13-21486, Plaintiff's First Amended Complaint filed 4/1/2014 at Exhibit 4. Based on this confidential settlement that they signed, the file (electronic and paper) at docket no. GD 13-21486 is sealed with redacted copies of all documents from it maintained in an unsealed file at docket no. GD 14-11740. This opinion might be too confusing if I maintained the terms of the confidential settlement and filed it at no. GD 14-11740. Therefore, it is being filed under seal at no. GD 13-21486.

2

charging lien in the Westmoreland County proceedings. Mr. and Mrs. Collier then commenced this proceeding in Allegheny County (their agreement with Mr. Balzer requires dispute resolution in Allegheny County) by a complaint for a declaratory judgment of the amount owed Mr. Balzer. Late in November of 2013, Mr. and Mrs. Collier persuaded the Honorable Gary Caruso in Westmoreland County to order Mr. Balzer to sign the insurer's $1,050,000 settlement check, to pay $19,000 from it to Mr. Balzer, to make a partial payment from it of $273,000 to Mr. and Mrs. Collier and to deposit the $758,000 balance into an interest bearing escrow account. In January of 2014, in this proceeding the Honorable Judith Friedman ordered an additional payment of $448,000 be made to Mr. and Mrs. Collier from the escrow account, leaving a balance in it of $310,000 plus interest.

In February of 2014 Mr. and Mrs. Collier filed a Motion for Partial Summary Judgment in this declaratory judgment proceeding. I granted the Motion by limiting Mr. Balzer's compensation to 20% of the property damage from the tornado. In July of 2014 the docket number in this proceeding was changed from GD 13-21486 to GD 14-11740. See footnote 2. After presiding over the non-jury trial of the remaining issues in the declaratory judgment proceeding, in January of 2015 I determined the balance owed Mr. Balzer is $38,642.97 while Mr. Balzer owed Mr. and Mrs. Collier $48,860.75 primarily for prevailing party attorney fees under the Public Adjuster Contract.

Mr. and Mrs. Collier as well as Mr. Balzer filed Motions for Post Trial Relief, which I denied. Both sides also then appealed to the Superior Court of Pennsylvania. This opinion will next address the errors the parties allege I made in their respective concise statements of errors complained of on appeal. See Pa. R.A.P. No. 1925(a). I first will address the errors Mr. and Mrs. Collier allege that I made.

3

Mr. and Mrs. Collier first contend I made an error by not limiting Mr. Balzer's claim to $2,500 (See Collier Concise Statement, ¶ no. 2) under this provision in the Contract:

> In the event the Insured/Claimant elects to either withdraw its claim and/or otherwise breaches the terms of this contract by actions which include, but are not limited to, fraud, unilateral termination of this contract outside the revocability period as set forth by Pennsylvania Statutes, or impeding the claims resolution process by failing to cooperate fully with Northern Public Adjusters, etc., then Northern Public Adjusters, shall be entitled to collect from the Insured/Claimant a fee which shall be $250.00 per hour for any and all time incurred assisting the Insured/Claimant or a minimum recovery of $2500.00 whichever is greater.

Non-jury trial Exhibit 1 ("Public Adjuster Contract signed April 26, 2011). Mr. and Mrs. Collier sent Mr. Balzer a letter on October 21,2013 notifying him of "contract termination" (Non-jury Trial Exhibit 3) and argue this unilateral termination therefore limits Mr. Balzer's claim to $2,500. However, the contractual language is that upon unilateral termination Mr. Balzer "shall be entitled to collect...$250.00 per hour...or $2,500.00...." I interpret the language to give Mr. Balzer the option to collect his fee under the formula, but not requiring him to do so. Mr. Balzer also interprets the provision this way. See transcript of non-jury trial, December 4-5, 2014 ("T." hereafter), pp. 361 and 363. This interpretation also is consistent with Pennsylvania law that only permits application of such a "liquidated damages" provision to cases where the measure of damages is difficult to ascertain. See, e.g., Laughlin v. Baltaden, Inc., 191 Pa. Super. 611, 159 A.2d 26 (1960) and Com., Dept. of Transp. v. Mitchell, 517 Pa. 203, 535 A.2d 581 (1987). Since damages were easily calculated by using the 20% of settlement proceeds formula set forth elsewhere in the contract, the liquidated damages provision cannot apply. Id. Therefore, I correctly declined to limit Mr. Balzer's claim to $2,500.

Mr. and Mrs. Collier next contend I made an error by determining they owed Mr. Balzer $38,642.97. See Collier Concise Statement, ¶ no. 3. The starting point for my analysis of the

amount owed Mr. Balzer is the limit for Coverage A, $257,000, and the limit for coverage C, $179,900, which totals $436,900. Mr. Balzer's 20% fee results in him earing $87,380 on those two coverages. I then utilize the same document Mr. and Mrs. Collier reference, "Collier v. Balzer, Property Damage Coverage"[3] (Id.). I subtract each amount in the column entitled "BALZER ACTUALLY EARNED," 2,710.72, 7,453.16, 22,958.39, 8,957.21, 8,256.60 and 1,543.28 from the $87,380 which reduces the amount to $35,500.64. From that amount, I add 20% of the portions of the amounts just subtracted that are attributed to Coverage B, 1,316.01 (20% of 6,580.04), 283.04 (20% of 1,415.18) and 1,543.28 (20% OF 7,716.42). The sum is $38,642.97.

Mr. and Mrs. Collier's argument that I made an error is premised on miscalculations and an incorrect assumption. They begin by utilizing the $52,122.28 total in the "BALZER ACTUALLY EARNED" column when addition of each number in that column does not yield a total of $52,122.28. Based on my April 11, 2014 Order granting partial summary judgment, Mr. and Mrs. Collier agree Mr. Balzer's fees are determined using the limits of Coverage A and Coverage C. However, they fail to then give Mr. Balzer credit for the fees he earned under Coverage B. Finally, Mr. and Mrs. Collier assume Mr. Balzer is not "entitled to any fee for amounts paid by the insurance carrier prior to his involvement." Collier Concise Statement, ¶ no. 3. While there is evidence Mr. Balzer initially made a verbal offer to waive his fee on amounts paid before his involvement, around the time of the $1,050,000 settlement both parties abandoned the concept with Mr. and Mrs. Collier offering Mr. Balzer $30,000 (See T., pp. 146 and 210) and Mr. Balzer requesting an additional $210,000. Therefore, my determination that Mr. and Mrs. Collier owed Mr. Balzer $38,642.97 was correct.

---

[3] In the Collier Concise Statement, the document entitled "Collier v. Balzer, Property Damage Coverage," is attached as Exhibit 2.

Mr. and Mrs. Collier's final contention is that I made an error in the amount of their counsel fee award. See Collier Concise Statement, ¶ no. 4. They complain that, even though Mr. Balzer submitted no response to the Affidavit of Bruce Gelman in Support of Award of Counsel Fees, my verdict was for a lesser amount than requested. The trial court, however, has authority to consider "whether the fees claimed to have been incurred are reasonable, and to reduce the fees claimed if appropriate." McMullen v. Katz, 603 Pa. 602, 615, 985 A.2d 769, 777 (2009). This authority does not vary because the opposing party neglects to respond to an attorney's fee affidavit. The attorney's skill, the amount of work performed and the character of the services rendered are among the factors a trial court examines to determine whether a counsel fee claim is reasonable. Id., citing In re Estate of LaRocca, 431 Pa. 542, 246 A.2d 337 at 339 (1968). Counsel for the Colliers claimed fees and costs of $55,270.75. After a reasonableness examination, I awarded $48,860.75. I did so because attorney Gelman and his law clerk's time spent on enforcing the Confidential Settlement Agreement, sealing docket no. GD 13-21486 and opposing Defendant's Motion to Unseal was unnecessary. Mr. Gelman instead should have redacted the confidential information from the start. I also reduced the law clerk's rate from $85.00 to $50 per hour on the balance of his time because no information ever was provided concerning the law clerk's education, experience and other qualifications[4]. Therefore, the amount of the counsel fee award was correct.

The errors that Mr. Balzer alleges I made are addressed next.

Mr. Balzer first contends that my decision to grant Mr. and Mrs. Collier's Motion for Partial Summary Judgment "violated the doctrine of coordinate jurisdiction" because another judge in this court "was deliberating the same issues...." Balzer Statement of Matters on Appeal, ¶ no. 1. However, I was aware that a colleague had taken Mr. Balzer's Motion for Distribution

---

[4] I reduced Mr. Gelman's fee from $35,805 to $34,540 and the law clerk's from $9,690 to $4,475.

6

of Funds to Defendant under advisement and received approval from that colleague to rule first on the Motion for Partial Summary Judgment. But even had I not received approval, I would not have violated the coordinate jurisdiction rule. That is because the rule is judges in a district should follow decisions on the same facts made previously by another judge in the district. See Yudacufski v. Commonwealth of Pennsylvania, 499 Pa. 605, 454 A.2d 923 (1982). Since the other judge had not yet made a decision, the coordinate jurisdiction rule could not have been violated. Therefore, my decision to grant partial summary judgment did not violate the coordinate jurisdiction rule.

Mr. Balzer next contends that Judge Friedman made an error by ordering the $448,000 payment from the interest bearing escrow account to Mr. and Mrs. Collier because the Public Adjuster Contract "required that all parties...be paid, or no parties be paid." Balzer Statement of Matters on Appeal, ¶ no. 2. There is no evidence of such a provision in the agreement between the parties. Instead, the contract simply requires that settlement payments be made payable to Mr. and Mrs. Collier and Mr. Balzer. The purpose of the provision is to prevent Mr. and Mrs. Collier from not paying Mr. Balzer for his services. Since the $310,000 remaining in escrow was greater than the amount Mr. Balzer claimed he was owed, the purpose of having Mr. Balzer be a payee on settlement checks was fulfilled. Therefore, Judge Friedman's order was not erroneous.[5]

Mr. Balzer next contends I made an error by interpreting the Public Adjuster Contract to preclude him from recovering 20% of the portion of the $1,050,000 attributable to the bad faith

---

[5] Mr. Balzer also argues Judge Friedman's order is contrary to the law of "mutually concurrent conditions." Balzer Statement of Matters on Appeal, ¶ no. 2. Where performance of contractual duties is to be concurrent by both sides, neither party may recover without having tendered performance. See Weichardt v. Hook, 3 W.N.C. 488, 1877 WPL 13201 (Pa. 1877). It is not apparent to me what contractual duty Mr. Balzer believes to be a mutually concurrent condition, but if it is seeking to reach an agreement on the amount of the settlement owed Mr. Balzer, Mr. and Mrs. Collier did so.

7

claim. See Balzer Statement of Matters on Appeal, ¶ no. 3. In taking this position, he focuses on this language in the Public Adjuster Contract, "...Adjuster will receive a fee equal to 20% of all settlement proceeds...," and argues other language in the Contract unsupportive of this position is inapplicable. Id. However, a description in the Contract of what Mr. Balzer was hired to do, to assist in negotiation of claims with the insurance carrier "for sustained damages/losses," is clearly applicable (emphasis added). This description of damages in the past tense at the very least creates an ambiguity as to whether Mr. Balzer was hired for assistance with a future claim arising from the insurance carrier's bad faith. The first sentence in the Contract, authorizing Mr. Balzer to negotiate claims resulting from "damages sustained to the Insured/Claimant's property," also is relevant (emphasis added). The portion of the $1,050,000 that is compensation for the insurer's bad faith certainly is not the damage to Mr. and Mrs. Collier's property for which Mr. Balzer's involvement is authorized. Going outside the Contract, Mr. Balzer testified he did not tell Mr. and Mrs. Collier he would "take 20 percent of their bad faith money." T., pp. 39-40. This additional evidence strongly supports my interpretation of the Contract, which was not erroneous.

Mr. Balzer also contends that neither public adjuster legislation nor the rule prohibiting unauthorized practice of law prevents him from receiving 20% of the bad faith claim. Balzer Statement of Matters on Appeal, ¶ nos. 4, 6 and 7. Mr. Balzer argues that 63 P.S. 1605(c)'s specific prohibition of public adjuster actions in relation to claims for personal injury or automobile property damage means they are not prohibited from acting in bad faith or other unspecified claims. Id. While the legislation does not explicitly bar payment to Mr. Balzer from the bad faith claim, the prohibition of the unauthorized practice of law set forth in 42 P.S. §2524 does bar such payment. In Dauphin County Bar Association v. Mazzacaro, 465, Pa. 545, 351

A.2d 229 (Pa. 1976), in affirming an injunction against a public adjuster engaged in the unauthorized practice of law, the Pennsylvania Supreme Court explained when a public adjuster crosses the boundary into the unauthorized practice of law as follows:

> While the objective valuation of damages may in uncomplicated cases be accomplished by a skilled lay judgment, an assessment of the extent to which that valuation should be compromised in settlement negotiations cannot. Even when liability is not technically 'contested', an assessment of the likelihood that liability can be established in a court of law is a crucial factor in weighing the strength of one's bargaining position. A negotiator cannot possibly know how large a settlement he can exact unless he can probe the degree of unwillingness of the other side to go to court. Such an assessment, however, involves an understanding of the applicable tort principles (including the elements of negligence and contributory negligence), a grasp of the rules of evidence, and an ability to evaluate the strengths and weaknesses of the client's case vis a vis that of the adversary. The acquisition of such knowledge is not within the ability of lay persons, but rather involves the application of abstract legal principles to the concrete facts of the given claim. As a consequence, it is inescapable that lay adjusters who undertake to negotiate settlements of the claims of third-party claimants must exercise legal judgments in so doing.

Id., 465, Pa. 545, 554, 351 A.2d 229, 233-234 (footnote omitted). Since legal judgments also would be required for Mr. and Mrs. Collier's bad faith claim, Mr. Balzer's involvement similarly would be the unauthorized practice of law.[6]

Mr. Balzer also contends I made insufficient factual findings and did not answer the question presented for the declaratory judgment. See Balzer Statement of Matters on Appeal, ¶ no. 4. Since Pennsylvania Rule of Civil Procedure No. 1038(b) gives the trial judge discretion not to file findings of fact ("trial judge _may_ include as part of the decision specific findings of fact...."), the argument that those I filed are insufficient is meritless. In any event, my factual findings were sufficient as they were what I believed necessary to support the verdict. Concerning the question presented for declaratory judgment, each of the six counts in the

---

[6] To the extent Mr. Balzer may argue he should be paid from the bad faith claim for his expert assistance in those proceedings, the contingency of his fee invalidates his argument. See Belfonte v. Miller, 212 Pa. Super. 508, 243 A.2d 150 (1968).

9

amended complaint were addressed in the January 8, 2015 Declaratory Judgment, Findings and Verdict.

Mr. Balzer next contends the Public Adjuster Contract is "fully integrated" and that parole evidence therefore should have been prohibited. See Balzer Statement of Matters on Appeal, ¶ no. 8. However, the Public Adjuster Contract lacks an integration clause and contains only a few general terms. As explained above, the provision giving Mr. Balzer "20% of all settlement proceeds" is ambiguous. Therefore, parole evidence was correctly admitted.

Mr. Balzer next contends "Plaintiffs and counsel for Plaintiffs defrauded" him. Balzer Statement of Matters on Appeal, ¶ no. 9. However, since Mr. Balzer made no counterclaim for fraud (or anything else) and Mr. Gelman is not a party, whether they defrauded Mr. Balzer is of limited importance. Without Mr. Balzer specifying how they allegedly defrauded him, it is difficult for me to formulate any further response except to say that I generally found Mrs. Collier and Mr. Gelman to be credible witnesses who did not defraud Mr. Balzer.

Mr. Balzer's final contention is that my decision to award Mr. and Mrs. Collier counsel fees was erroneous because Mr. Balzer won the majority of the legal issues and decisions and Mr. and Mrs. Collier lost the battle to limit Mr. Balzer's claim to $2,500. See Balzer Statement of Matters on Appeal, ¶ no. 10. The Public Adjuster Contract states:

> In the event of any action or proceeding relating to the interpretation or enforcement of this agreement or any breach hereof, the prevailing party in such action or proceeding shall be entitled to recover from the other party all court costs, expenses and reasonable attorneys' fees (including all pre-trial, trial and appellate proceedings) incurred by the prevailing party in that action or proceeding, in addition to any other relief to which the prevailing party may be entitled.

Since the Contract does not define "prevailing party," it means the party the fact finder declared the winner, including "situations where a party receives less relief than sought or even nominal

10

relief...." <u>Profit Wize Marketing v. Wiest</u>, 2002 PA Super 380, 812 A.2d 1270, 1275. While I disagree with Mr. Balzer's conclusion that he won the majority of the legal issues and decisions, that is not the appropriate way to determine whether Mr. and Mrs. Collier were the prevailing party. Instead, the analysis simply is to determine the party I declared the winner. Since I declared Mr. and Mrs. Collier the winner of the primary matter in dispute, whether Mr. Balzer was entitled to 20% of the bad faith claim recovery, they were the prevailing party. Therefore, my decision to award Mr. and Mrs. Collier counsel fees was correct.

BY THE COURT:

_____,J.

11